## McLEAN vs. NUGENT and another.

PROMISSORY NOTE: *Unauthorized delivery.*

1. In an action on a promissory note made by defendants and running to C. or bearer, there was evidence tending to show that it was deposited by defendants with the supervisors of a town, to be by them delivered to C., on condition that by a certain day he should complete a certain road according to his contract with the town. C. did not perform his contract; but, after the expiration of the time therefor, and after the maturity of the note, the road was built by another person, and accepted by the supervisors, and said note delivered to him without the consent of defendants. *Held*, that upon these facts the defendants would not be liable upon the note.
2. It was competent for defendants to make the delivery of the note depend upon the conditions above stated; and it makes no difference whether or not they are shown to have had any special interest in requiring the work to be done by and the note delivered to C., rather than any other person.

APPEAL from the Circuit Court for *Calumet* County.

Action on a promissory note in the following form: "Sept. 2, 1871. On or before the first day of January next, we promise to pay to B. F. Carter, or bearer, the sum of one hundred and seventy-five dollars. NUGENT & COLLINS." The answer was, 1. That the note was without consideration. 2. That it was never delivered to Carter, but was placed in the custody

of the board of supervisors of the town of Harrison, in trust, to be ·delivered to said Carter when, and not before, he should complete a certain work on a certain highway in said town according to his written contract made with the supervisors at or about the time the note was made ; and that Carter did not complete said work according to said contract, nor at all, and did not receive the note.    3. That plaintiff became possessed of the note after its maturity, with knowledge of the facts.

On the trial, the defendants introduced evidence tending to prove the facts alleged in the second paragraph of their answer. The contract with Carter was put in evidence, and it stipulated that the work therein described should be completed by January 1, 1872, and that Carter should take in part payment therefor the note of defendants for $175.    The work consisted in widening, straightening and otherwise improving a certain part of a public road in said town ; and "defendants were interested in having the improvement made, for the benefit of their mills."    It further appeared that Carter did not complete the road ; that it was not completed on the 29th of June, 1872 ; and that defendants on that day notified the supervisors not to deliver said note to any person, on the ground that the conditions for the payment out of the same " had "in no wise been complied with ; " and that it was delivered by the supervisors in the following September to one H. B. Nugent, who had undertaken to complete the work contracted for by Carter. For the plaintiff, the chairman of the board of supervisors testified that he received the note from defendants to be kept until the job contracted for by Carter.was completed, and to be delivered if the job was completed and accepted by the board ; that the job had been finished by H. B. Nugent, and witness delivered the note to him after the work was done and accepted ; that when defendants, notice of June 29, 1872, was served upon the board, said H. B. Nugent "had the job, and had done some work on it."    On cross examination, the witness testified that when defendants gave him ·the note, " the agreement was, to

give it to Carter or the man who completed the contract." He further testified to facts showing that the work, as constructed, was not, in certain respects, in accordance with Carter's contract.

The court charged the jury, in substance, as follows: "If you find that the road was to be built according to the specifications in the contract with Carter, by whom so ever it might be built, then, if it had *not* been built according to those specifications, or substantially so, plaintiffs can not recover but if you find that the note was not to be delivered unless the road was built according to the specifications in the contract with Carter, and that it was built in substantial compliance with those specifications, and was accepted by the board of supervisors of the town, plaintiff must recover." The following instruction, asked by defendants, was refused: "If the note was to be delivered to Carter on condition that he built the road according to his contract with the town, and Carter did not perform his contract, then the consideration failed, and defendants are entitled to your verdict."

Verdict for the plaintiff; new trial denied; and from a judgment on the verdict defendants appealed.

*A. L. Collins*, for appellants:

The note sued on never had any vitality, because it was never delivered to the payee. *Marvin v. McCullum*, 20 Johns., 288; *Catlin v. Gunter*, 1 Duer, 253; 1 Kern., 368; *Chamberlain v. Hopps*, 8 Vt., 94; *Thomas v. Watkins*, 16 Wis., 549. A note takes effect and becomes a living instrument from the time of its delivery (2 Johns., 300); and it cannot be vitalized by any one except the maker, after the time limited therein for its payment. Negotiation of a note must be first made by the payee, where one is named therein. No title to the paper, in such a case, can be had or transmitted except through the payee. 2 Barn. & Cress., 295; 9 Serg. & R., 91; 1 Greenl. Ev., § 284; 16 Barb., 548; 6 Exch., 869. 2. The conditions in the contract with Carter related to the *time*, as well as the *manner* of

completing the road. The note was made payable at the same time which was fixed in the contract for completing the road. The conditions being then entirely unfulfilled, the supervisors had no authority thereafter to deliver the note to any person; and especially were they without such authority after being expressly notified by defendants not to deliver it to any one.

*Hector McLean* (with *Jay Mayham*, of counsel), for defendants:

1. A note payable to A. B. or bearer, may be put in circulation by delivery to C. D., he having a beneficial interest in the note at the time of such delivery. 2. The defendant agreed, if the supervisors would build the road, to pay $175 towards it. The jury have found that the road was built and accepted, and the note delivered by the supervisors in part payment therefor. The defendants received the benefits, and why should they be excused from paying?

Dixon, C. J. It was competent for the defendants, at the time of executing and depositing the note with the chairman of the board of supervisors of the town, to stipulate or make it a condition that the note should only be delivered by the depositary to Carter, the party then under engagement by contract with and employed by the town in building the road. It was competent for the defendants at that time to agree with the supervisors, or to say or direct, that the note should only be delivered to Carter in case he completed the work to the satisfaction of the supervisors. We know not what interest the defendants may have had in requiring the note to be delivered to Carter, or in making it a condition that he should perform the work rather than that the work should be done by some other person, and the note delivered to that person; nor is it material whether the defendants had any such special interest or not. It was their right, if they chose, without particular interest, to make such condition, or to give directions that the note should be delivered to Carter on his performance of the work, in which case, if such was the agreement or direction, the delivery of the

note by the chairman to any other person was unauthorized by the defendants and will not bind them, the fact being undisputed that no delivery was made until after maturity of the note, or to a person unaffected with notice of the agreement between the defendants and the supervisors. The defendant *Nugent*, as witness upon the stand, testified to facts tending to show that such was the agreement between the defendants and the supervisors, or the chairman, with whom the note was deposited; and the court, in effect, withheld the consideration of that testimony from the jury. The court refused to give the second instruction asked for by the defendants, which was a proper one in view of the testimony so given, and then, in the charge, after having stated that such was the claim of the defendants, proceeded to comment on the testimony of the two supervisors in a way that must, or might, have very greatly prejudiced the jury in their consideration of the testimony given by the defendant *Nugent.* It was error for the court to refuse the second request to charge made by the defendants; and such error was not cured by anything found in the general charge.

A still further and more palpable ground of error consisted, we think, in the omission of the court to submit for the determination of the jury the question whether the completion of the work on or before the first day of January, 1872 (the time specified for its performance under the contract with Carter, and also the time at which the note became due and payable), was or was not one of the conditions upon which the chairman of the board of supervisors was authorized to make final delivery of the note. The note and contract themselves furnish strong presumptive evidence that such must have been the understanding and agreement; and besides those there was the positive testimony to that effect of the defendant *Nugent*, who, in this particular, seems not to have been contradicted, or at least not clearly or directly, by the testimony of the two supervisors. The court omitted entirely this part of the case made by the defendants, or which the evidence tended to make, thus mak-

ing the verdict turn merely upon the performance of the work in substantial compliance with the specifications in the Carter contract, and the acceptance of the same by the board of supervisors, but without regard to the time of such performance, or when the acceptance took place. It appears to have been a fact not in dispute, that the work was not completed until long after the first of January, 1872, and that it was not accepted by the supervisors until after the month of June in that year.

*By the Court.* — Judgment reversed, and a *venire de novo* awarded.